B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| The Morganti Group, Inc. | Patriot Bank, N.A. |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Kristin B. Mayhew; McElroy, Deutsch, Mulvaney & Carpenter, LLP, 30 Jelliff Lane, Southport, CT  06890; 203.319.4022 | Robert E. Kaelin; Murtha Cullina LLP, 185 Asylum Street, Hartford, CT  06103; 860.240.6036 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| □ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        □ Other<br>□ Trustee | □ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT FOR (I) DETERMINATION OF VALUE OF PREPETITION COLLATERAL PURSUANT TO BANKRUPTCY CODE § 506(a) AND BANKRUPTCY RULE 3012; (II) MARSHALING OF ASSETS; (III) EQUITABLE SUBORDINATION; (IV) RECHARACTERIZATION AND DISALLOWANCE OF THE DEBTORS' PAYMENTS OF INTEREST, FEES, COSTS AND EXPENSES PURSUANT TO BANKRUPTCY CODE §506(b); AND (IV) RELATED RELIEF

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☒ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Wall Street Theater Company, Inc., et al | | BANKRUPTCY CASE NO.<br>18-50132 (Lead) | |
| DISTRICT IN WHICH CASE IS PENDING<br>Connecticut | | DIVISION OFFICE<br>Bridgeport | NAME OF JUDGE<br>Manning |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Kristin B. Mayhew | | | |
| DATE<br><br>June 1, 2018 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Kristin B. Mayhew, Esq. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| _____ : | **CHAPTER 11** |
| **In re:** : | |
| : | **Jointly Administered** |
| **WALL STREET THEATER COMPANY, INC.** : | **Case No. 18-50132 (JAM)** |
| **WALL STREET MASTER LANDLORD, LLC** : | |
| **WALL STREET MANAGING MEMBER, LLC** : | |
| : | |
| **Debtor.** : | |
| : | |
| _____ : | |
| : | |
| **THE MORGANTI GROUP, INC.,** : | |
| : | |
| **Plaintiff,** : | **Adv. Pro. No. ___** |
| : | |
| **v.** : | |
| : | |
| **PATRIOT BANK, N.A.,** : | |
| : | |
| **Defendant.** : | **June 1, 2018** |
| _____ : | |

**COMPLAINT FOR (I) DETERMINATION OF VALUE OF PREPETITION**
**COLLATERAL PURSUANT TO BANKRUPTCY CODE § 506(a) AND BANKRUPTCY**
**RULE 3012; (II) MARSHALING OF ASSETS; (III) EQUITABLE SUBORDINATION;**
**(IV) RECHARACTERIZATION AND DISALLOWANCE OF**
**THE DEBTORS' PAYMENTS OF INTEREST, FEES,**
**COSTS AND EXPENSES PURSUANT TO BANKRUPTCY**
**CODE §506(b); AND (V) RELATED RELIEF**

The Morganti Group, Inc. ("Morganti" or "Plaintiff"), a secured creditor and party-in-interest, files this adversary complaint (the "Complaint") against Defendant, Patriot Bank, N.A. ("Patriot" or "Defendant"), pursuant to Rules 3012 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and respectfully alleges as follows:

1

## NATURE OF THIS ACTION

1.    This is an action: (i) to determine the value of the Defendant's Pre-Petition Loan

Collateral (as defined *infra*); (ii) for a declaratory judgment of common law marshaling

requiring the Defendant to seek satisfaction of its claim first from the Debtors' Personal

Property and Tax Credits prior to satisfaction from the Real Property; (iii) to equitably

subordinate the Defendant's Mortgage on the Real Property to Morganti's Mechanics' Lien as

a result of Defendant's misrepresentations designed to induce Morganti to continue to provide

construction services at a time when the Defendant knew the Debtors were undercapitalized;

(iv) to avoid and recharacterize the Defendant's receipt of post-petition interest, fees and costs

as payment of principal in the event, and only in the event, that the Court determines the

Defendant is undersecured; and (v) a determination that the equities of the case exception of

§552 of the Bankruptcy Code applies to the Replacement Liens granted to Defendant Patriot in

the event that the Court ultimately determines that the Defendant is undersecured.

2.    Plaintiff has standing to prosecute this Complaint by virtue of paragraph 4 of the

Third Stipulation and Order (1) Authorizing Continued Use of Cash Collateral, (2) Granting

Adequate Protection, and (3) Scheduling Hearing on Final Use of Cash Collateral (the "Interim

Cash Collateral Order") entered by the Court on May 8, 2018. [ECF No. 192].

3.    Paragraph 4 of the Interim Cash Collateral Order provides in pertinent part,

"[a]ny party in interest that wishes to challenge the nature, extent, priority, or scope of

Patriot's liens and/or secured status shall file an appropriate motion or adversary proceeding

("Challenge Action") on or before June 1, 2018 (the "Challenge Period")." (Cash Collateral

Interim Order at ¶4).

2

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. § 1334(b) and pursuant to 28 U.S.C. § 157(a).

5.    This adversary proceeding is a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (K).

6.    Venue in this district is proper pursuant to 28 U.S.C. § 1409.

## THE PARTIES

7.    The Plaintiff is a party in interest and a secured creditor by virtue of certain mechanics' liens (as described in greater detail below) placed on that certain real property located at 71 Wall Street, Norwalk, Connecticut.

8.    The Defendant alleges a first priority lien and security interest in substantially all of the Debtors' assets to secure $8,800,000.00 of principal indebtedness.

## FACTUAL BACKGROUND

**A.    Patriot's $5.2 Million Construction Loan**

9.    Upon information and belief, on or about April 10, 2015, Patriot made a construction loan to Wall Street Theater Company, Inc. ("WSTC") in the principal amount of $5,200,000.00 (the "Original Construction Loan") for the purpose of renovating an historic theater (the "Project") located at 71 Wall Street, Norwalk, Connecticut (the "Real Property").

10.    Upon information and belief, the Original Construction Loan was secured by a mortgage on the Real Property.

11.    Upon information and belief, the Original Construction Loan had a term of eighteen (18) months and a maturity date of October 1, 2016.

3

12.    An appraisal prepared by Danny Greenlaw of Rapid Appraisal (the "2013 Appraisal") on behalf of Frank Farricker, a representative of WSTC, dated October 13 2013, indicated that upon completion of the Project, the Real Property would have a fair market value of $7,000,000.00.

13.    An appraisal prepared by The Austin McGuire Company (the "2014 Appraisal") on behalf of Patriot dated August 20, 2014, indicated that upon completion of the Project, the Real Property would have a fair market value of $6,600,000.00.

14.    In February, 2015, WSTC entered into a construction contract with GTL Construction, LLC ("GTL") to serve as the general contractor on the Project.

15.    After performing work on the Project for approximately one year, a dispute arose between GTL and WSTC, which culminated in GTL's termination as the general contractor on the Project.  GTL alleged that it had not been paid for its work, and recorded a mechanics' lien against the Project in the amount of $261,672.25.

16.    Thereafter, WSTC sought a replacement contractor and entered into negotiations with Morganti for work on the Project.  On or about June 29, 2016, Morganti, as general contractor, and WSTC, as owner, entered into a construction contract (the "Construction Contract") for the renovation of the Project, pursuant to which Morganti agreed to perform certain specified renovation work on the Project in exchange for the lump sum price of $5,682,632 (the "Original Contract Sum"), subject to addition or deletion in accordance with the terms and conditions of the Construction Contract.

17.    Prior to the commencement of Morganti's work on the Project in or about April, 2016, the Original Construction Loan was significantly depleted.

4

18.     When Morganti commenced its work on the Project, both WSTC and Patriot were aware that WSTC was undercapitalized for the Project and that the Original Construction Loan was insufficient to pay for Morganti's performance of the Contract.

19.     Morganti commenced its work on the Project on or about May 18, 2016 and at all times performed its work in strict and full accordance with the Construction Contract. Morganti's work on the Project was delayed by WSTC's actions and omissions on the Project, including (among other things) its failure to pay for a building permit and its failure to procure construction drawings, all of which led to multiple change orders for labor and materials above and beyond the scope of work contemplated by the Construction Contract.

20.     Throughout May and June, 2016, both WSTC and Patriot's consultant, Project Control Associates ("PCA"), analyzed the cost to complete the Project and prepared budgets, which forecasted the cost to complete the Project.

21.     At all times relevant hereto, both WSTC and Patriot were aware of the cost to complete the Project, including the cost to complete Morganti's work.

22.     Based on those budgets, in or about August, 2016, WSTC requested a new construction loan from Patriot in the amount of $10 million, which amount was based on budgets and reports prepared for Patriot by its consultant, PCA.

23.     Upon information and belief, the Construction Loan matured on October 1, 2016.

24.     As of October 1, 2016, construction on the Project was on-going and substantial work remained until the Project was complete.

5

25.     Pursuant to that certain appraisal dated August 19, 2016, prepared by GGP Real Estate Advisors on behalf of Patriot (the "2016 Appraisal"), the estimated remaining construction costs as of that time were approximately $7,870,000.00.

26.     The 2016 Appraisal established the "As-Is" Market Value of the Real Property as of August 19, 2016 to be $3,750,000.00.  It further provided that the "Value Upon Completion" of the Project was $11,785,000.00 which notably included the value of certain so-called tax credits.

27.     Upon information and belief, on November 8, 2016, Patriot's Board Loan Committee approved WSTC's request to modify and increase the existing construction loan from $5,200,000.00 to $8,800,000.00.

28.     As of November 23, 2016, the outstanding principal balance of the Original Construction Loan was $4,837,310.38.

29.     On or about November 28, 2016, Patriot extended the maturity date on the Original Construction Loan to December 30, 2016.

**B.     Patriot's $8.8 Million Construction Loan**

30.     In late December, 2016, Patriot directed WSTC to send to Morganti an agreement to subordinate Morganti's lien rights to any new loan provided by Patriot to WSTC for additional construction costs.

31.     At the time that demand was made for Morganti's lien subordination, both WSTC and Patriot were aware that the new construction loan was insufficient to pay for completion of the Project, including Morganti's work.

6

32.    In late December, 2016, Morganti, WSTC, and Patriot negotiated the terms and conditions related to any subordination of Morganti's mechanic's lien rights.

33.    Among other things, Morganti requested that, as a condition of its agreement to subordinate its lien rights to Patriot's new loan, that WSTC confirm that it would pay Morganti for any and Applications for Payment that were past due as well as "any upcoming requisitions for the completion of this Project."

34.    On December 21, 2016, WSTC confirmed that it would pay Morganti for completion of the Project.

35.    At no time during the negotiation of any agreement concerning Morganti's lien rights, did WSTC or Patriot ever inform Morganti that the Project was undercapitalized or that WSTC lacked the funds to pay for Morganti's completion of the Project.

36.    On December 29, 2016, the very same day that WSTC and Patriot were to close on the new construction loan, Patriot presented Morganti with that certain Contractor's Consent and Subordination of Construction Contract and Contractor Fee Agreement, which, among other things sought to subordinate Morganti's lien rights to any new construction loan provided by Patriot (the "Subordination Agreement").

37.    After reviewing the Subordination Agreement, Morganti made certain material changes to the agreement that were accepted by Patriot before executing a copy and delivering same to Patriot.

38.    On December 29, 2016, WSTC, Wall Street Master Landlord, LLC ("Master Landlord"), Wall Street Managing Member, LLC ("Managing Member"), Wall Street Manager, LLC ("Manager") and Patriot entered into that certain Construction Loan

7

Agreement (the "Construction Loan Agreement") pursuant to which Patriot agreed to increase the amount of the Original Construction Loan (the "Modified Construction Loan").

39.     Pursuant to the Construction Loan Agreement, WSTC, Master Landlord and Patriot agreed that any of the proceeds from the sale of certain tax credits as described therein and received by the borrowers were to be used to pay down the Modified Construction Loan with the exception of sale proceeds from certain federal historic tax credits which could be used to fund the cost of construction on the Project (the "FHTC Proceeds").

40.     On December 29, 2016, WSTC and Master Landlord (collectively, the "Borrowers") executed that certain Construction Loan Mortgage Note (the "Note") in favor of Patriot in the principal amount of $8,800,000.00.

41.     According to the Project Budget attached to the Note as Exhibit F, the Project had a total "Project Cost" of $12,530,828.00.

42.     On December 29, 2016, WSTC and Master Landlord executed that certain Open-End Construction Mortgage Deed, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage") in favor of Patriot.

43.      Pursuant to the Mortgage, WSTC and Master Landlord granted Patriot a first, priority lien on the Real Property and all assets of WSTC and Master Landlord, including all personal property and certain so-called tax credits (the "Pre-Petition Lien").

44.     Pursuant to that certain Payment, Performance and Completion Guaranty (the "Guaranty"), the Borrowers' obligations under the Note were guaranteed by Managing Member and Manager.

45.     Also included in the binder of closing documents designed by Patriot and produced to Morganti in the course of discovery in certain state court pre-petition litigation was the original proposed subordination agreement to which Morganti did not agree. Curiously, the original proposed subordination agreement which does not contain Morganti's changes and is not the version to which Morganti agreed, attaches Morganti's signature page from the Subordination Agreement that Morganti did negotiate and agreed to.

46.     On or about December 29, 2016, the Construction Contract was assigned by WSTC to Master Landlord pursuant to that certain Assignment and Assumption of Contractor Agreement, with both WSTC and Master Landlord remaining liable to Morganti for payments.

47.     As of December 29, 2016, only $1,261,538.00 was available to pay for future construction costs from the proceeds of the Modified Construction Loan.  In just five (5) months after closing, the entire loan had been drawn down except for $164,240.23. As of July 17, 2017, the entire construction loan of $8,800,000.00 had been fully drawn by the Debtors.

**C.      Morganti's Mechanics' Liens**

48.     Following the December 29, 2016 closing on the Modified Construction Loan, which loan was wholly insufficient to pay Morganti's entire cost of completion, WSTC issued payment to Morganti on its prior Applications for Payment Nos. 6 and 7 which payments, although late, covered Morganti's work on the Project through November 30, 2016.  WSTC thereafter made a partial payment on Morganti's Application for Payment No. 8, covering work performed through December 31, 2016.

49.     Both prior to, and after December 29, 2016, both WSTC and Patriot were aware that the Project was undercapitalized and that the Modified Construction Loan and the

9

FHTC Proceeds were insufficient to pay for the completion of the Project, including

Morganti's performance of the Contract.

50.    In order to obtain Morganti's performance of the Contract, and also to obtain

additional tax credits to pay down the Modified Construction Loan, both Patriot and WSTC

developed and executed a scheme to obtain Morganti's performance even though there were

insufficient funds to pay Morganti.

51.    Specifically, on January 3, 2017, almost immediately following the closing of

the Modified Construction Loan, Patriot, through its Executive Vice President and Chief

Lending Officer, Richard A. Muskus, Jr., emailed WSTC's Owner's Representative, Frank

Farricker with Patriot's "plan" for dealing with Morganti.

52.    According to Patriot's "plan," following the closing of the Modified

Construction Loan, Patriot was aware that there was only $2,507,336 available to pay for the

completion of construction work on the Project (which included $1.8 million in potential future

proceeds from the sale of the FHTCs to Enhanced Capital), including all of Morganti's work

and the work to be performed by WSTC's own theatrical contractors (the "Theatrical

Contractors").

53.    According to Patriot's "plan," Muskus proposed to allocate only $807,336 for

the completion of Morganti's work on the Project, and $1,700,000 for the completion of work

performed by WSTC's Theatrical Contractors.

54.    As of January 3, 2017, Morganti had been paid the amount of $3,948,142.85.

55.    As of January 3, 2017, both WSTC and Patriot were aware that they would

need at least $1,734,489 just to pay Morganti the Original Contract Sum of $5,682,632, far

more than Patriot's "plan."

56.     As of January 3, 2017, both WSTC and Patriot were aware that they would need at least $2,373,448.77, based on the increased Contract Sum reflected in Morganti's Application for Payment No. 8, which covered work performed through December 31, 2016, far more than Patriot's "plan."

57.     Morganti's Application for Payment No. 8, was certified by the Architect, and approved by Patriot's consultant, The Helmes Group, LLP.

58.     Thus, according to Patriot's "plan," neither Patriot nor WSTC was capable of paying Morganti either the Original Contract Sum or any increased Contract Sum as approved by both WSTC and Patriot.

59.     Despite knowing that both the Modified Contract Loan and FHTC Proceeds were insufficient to pay for the completion of Morganti's work on the Project, Patriot failed to disclose this fact to Morganti.

60.     Despite knowing that both the Modified Contract Loan and FHTC Proceeds were insufficient to pay for the completion of Morganti's work on the Project, Patriot induced Morganti to keep performing work on the Project throughout the months of January, February, and March, 2017.

61.     Morganti continued working on the Project during the months of January, February, and March, 2017.  Unbeknownst to Morganti, and contrary to the representations made by WSTC and the Defendant, WSTC was wholly unable to pay for Morganti's work on the Project during the months of January, February and March, 2017.

11

62.     Despite not being paid on its requisitions, on March 30, 2017, as a result of Morganti's work on the Project, the project architect issued a certificate of substantial completion, in which Morganti's work was certified as completed in accordance with the Construction Contract.  Among other things, the architect certified that:

> The Work performed under this Contract has been reviewed and found, to the Architect's best knowledge, information and belief, to be substantially complete.  Substantial Completion is the stage in progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner occupy or utilize the Work for its intended use.

63.     As a result, WSTC was able to utilize the Project for its intended purposes under a Conditional Certificate of Occupancy as evidenced by its "soft opening" on April 11, 2017 and "grand opening" on May 15, 2017.

64.     As a result of Morganti's work and the Architect's declaration of substantial completion, WSTC and Patriot were able to access the proceeds for certain tax credits which were used to, among other things, make interest payments to Patriot.

65.     Despite performing work on the Project in an amount in excess of $2.3 million, the only other payment made to Morganti by WSTC was in the amount of $960,392, an amount similar to the amount allocated by Patriot to be paid to Morganti.

66.     On April 11, 2017, Morganti notified WSTC that it was in material breach of the Construction Contract by failing to issue payment to Morganti based on Applications for Payment which were certified by the project architect.  Morganti further notified WSTC that, as a result of this material breach, Morganti and its subcontractors were relieved of any further obligations under the Construction Contract and that Morganti was permitted to suspend its

12

performance of the Construction Contract, including any work required for a Final Certificate of Occupancy.

67.     Following Morganti's declaration of material breach, Morganti issued its final Applications for Payment to WSTC and the project architect in the respective of amounts of $860,263.32 and $864,851 for work performed on the Project through March 31, 2017, bringing the total amount still due and owing Morganti for work performed on the Project to $2,387,540.79, based on a final Contract Sum of $7,272,834.45.

68.     On April 29, 2017, in order to secure payment for the labor, materials and services furnished for the Project, Morganti recorded a Certificate of Mechanics' Lien against the Real Property in the amount of One Million Five Hundred Twenty-Two Thousand Six Hundred and Eighty-Nine and 26/100 dollars ($1,522,689.26) (which was the amount past due on Morganti's then pending Applications for Payment, plus interest, costs and attorney's fees). The Certificate of Mechanics' Lien was duly signed and sworn to under oath, filed with the Town Clerk of Norwalk and duly recorded in Volume 8518 at page 0296 of the Norwalk Land Records.

69.     On May 17, 2017, Morganti filed an amended mechanics' lien against the Real Property (the "Mechanics' Lien") in the amount of Two Million Three Hundred Eighty Seven Thousand Five Hundred Forty and 79/100 dollars ($2,387,540.79), recorded in the Norwalk Land Records in Volume 8528 at Page 58.  On May 26, 2017, Morganti served WSTC with a true and attested copy of the Mechanics' Lien, which set forth the date on which Morganti commenced providing labor, materials and rendering services on the Project and further expressed Morganti's intention to claim a lien for those materials and services.

13

70.     On May 6, 2017, Morganti filed a Demand for Arbitration (the "Demand") with the American Arbitration Association ("AAA") against WSTC and Master Landlord in accordance with the Construction Contract (the "Arbitration").

71.     Pursuant to its Demand, Morganti alleges that WSTC and Master Landlord materially breached the Construction Contract and seeks an award of $2,387,540.79 plus interest, costs and attorneys' fees, all as provided under the Construction Contract.

72.     On August 15, 2017, pursuant to that certain Agreement for the Purchase and Sale of Connecticut Tax Credits for Infrastructure Projects in the Entertainment Industry dated December 29, 2016, Master Landlord sold certain tax credits to Enhanced Capital Consulting, LLC ("Enhanced") in the amount of $1,629,878.40 (the "Purchase Price").

73.     As described in that certain Flow of Funds Memorandum dated August 15, 2017, Enhanced paid a portion of the Purchase Price in the approximate amount of $276,081.76 directly to certain creditors of WSTC and Master Landlord including, Lockwood & Mead, Brian Wishneff & Associates, and CohnReznick.

74.     Instead of paying the balance of the Purchase Price, or $1,353,796.64 directly to WSTC and Master Landlord, Enhanced wired that amount to the law firm of Hinckley Allen and Snyder, LLP ("HAS") who was representing WSTC and Master Landlord in the Arbitration against Morganti.

75.     From August 23, 2017 through February 2, 2018, HAS disbursed the entire $1,353,796.64 presumably at the direction of WSTC, Master Landlord and the Defendant, to, *inter alia*, a variety of sub-contractors on the Project (including Morganti's own subcontractors with which neither WSTC nor Patriot were in privity of contract), over $217,000.00 to Patriot

14

for interest payments, and $12,600.00 to Lockwood & Mead.  The payments to Morganti's

subcontractors were made to obtain work necessary for a final certificate of occupancy and

were made without Morganti's consent or involvement and were designed to avoid WSTC's

payment obligations to Morganti.

76.    The transfers of the Debtors' property made pursuant to the Flow of Funds

Memorandum were done with the express knowledge and consent of the Defendant who signed

off on the Flow of Funds Memorandum.

**D.    The Debtors' Bankruptcy Filing**

77.    On February 4, 2018 (the "Petition Date"), WSTC, Master Landlord, and

Managing Member (collectively, the "Debtors") filed voluntary petitions for relief under

Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of

Connecticut, Bridgeport Division.

78.    On the Petition Date, the Debtors filed that certain Motion for Interim and Final

Orders Authorizing Debtors to Use Cash Collateral and Granting Adequate Protection (the

"Cash Collateral Motion").

79.    Subsequent to the Petition Date, the Debtors obtained several orders granting

the relief sought in the Cash Collateral Motion on an interim basis and approving the Debtors'

use of cash collateral on an interim basis.

80.    Pursuant to the Interim Order, Patriot is entitled to receive monthly interest

payments in the amount of $46,047.23 as adequate protection (the "Post-Petition Adequate

Protection Payments").  (Interim Order at ¶6). Upon information and belief, the total amount

paid by the Debtors is an amount not less than $138,141.69.

15

81.    Pursuant to the Interim Order, the Debtors granted Patriot replacement liens in, and upon, all of the Debtors' personal property and real property to the extent that the Debtors' secured position erodes in value (the "Replacement Liens").  (Interim Order at ¶5).

82.    On or about February 28, 2018, the Debtors filed their respective Schedules ad Statements of Financial Affairs.

83.    Pursuant to Schedule B, WSTC estimates that the fair market value of the Real Property is $4,500,000.00.

84.    According to the Debtors' Schedules, the Debtors' collective personal property (excluding Tax Credits) totals approximately $1,485,990.19 (the "Personal Property").

85.    According to WSTC's Schedules, WSTC owns State Historic Preservation Tax Credits in the amount of $1,805,162.00.

86.    According to Master Landlords' Schedules, it owns the following tax credits: (a) Connecticut Green Building Tax Credits in the amount of $748,037.00; (b) Connecticut Film and Digital Media Infrastructure Tax Credits in the amount of $490,000.00; and (c) Historic Preservation Tax Credits in the amount of $1,121,082.00.  As such, the total tax credits held by Master Landlord have a value of $2,359,119.00.

87.    The tax credits held by the Debtors collectively total $4,164,281.00 (the "Tax Credits").

88.    The Real Property, the Personal Property and the Tax Credits are hereafter collectively referred to as the Pre-Petition Loan Collateral.

89.    On May 4, 2018, Patriot filed a proof of claim against each of the Debtors asserting a secured claim in the amount of $8,800,000.00 (the "Patriot Proof of Claim").

16

Patriot's Proof of Claim further asserts that the Prepetition Loan Collateral has a value of $8,649,000.00.  As such, according to Patriot, it holds an unsecured claim in the amount of $151,000.00.

### COUNT ONE
**(Valuation of Prepetition Loan Collateral – 11 U.S.C. 506(a)
And Bankruptcy Rule 3012)**

90.     Plaintiff repeats and realleges the foregoing allegations as if set forth fully herein.

91.     The Debtors and Patriot have both taken the position that the Patriot is an undersecured creditor.

92.     Based, *inter alia*, on the 2013 Appraisal, the 2014 Appraisal and the 2016 Appraisal, the Defendant's Prepetition Loan Collateral likely exceeds $10,500,000.00.

93.     WHEREFORE, Plaintiff seeks a determination by the Court pursuant to Bankruptcy Rule 3012 and Bankruptcy Code §§ 105 and 506(a):

    a.  declaring the value of the Prepetition Loan Collateral as of the Petition Date;

    b.  awarding costs of suit; and

    c.  awarding such other and further relief as the Court deems just and proper.

### COUNT TWO
**(Common Law Marshaling of Assets)**

94.     Plaintiff repeats and realleges the foregoing allegations as if set forth fully herein.

95.     Defendant Patriot asserts a blanket security interest in all of the Debtors' collateral, including the Real Property.

96.     Plaintiff, is secured by only the Real Property by virtue of its Mechanics' Lien.

17

97.     Defendant should be required to, in the first instance, satisfy its claim from the Personal Property and Tax Credits which total $5,650,271.19 prior to seeking payment from the Debtors' Real Property which is also subject to Morganti's Mechanics' Liens.

98.     WHEREFORE, Plaintiff requests a determination by the Court:

    a.  That Patriot shall be required to marshal assets such that, in the first instance, it seeks re-payment of its prepetition indebtedness from the Debtors' Personal Property and Tax Credits prior to seeking collection from the Real Property;

    b.  Awarding costs of suit, reasonable attorneys' fees, and pre- and post-judgment interest, if applicable; and

    c.  Awarding such other and further relief as this Court deems just and proper.

## COUNT THREE
### (Equitable Subordination)

99.     Plaintiff repeats and realleges the foregoing allegations as if set forth at length herein.

100.    As a result of the representations made by Patriot in the months both preceding and following the closing of the Modified Construction Loan, Morganti was induced to continue performance under the Construction Contract based on promises of payment.

101.    In conjunction therewith, Patriot engaged in the following inequitable conduct, including:

    a.  Presenting to Morganti an agreement to subordinate Morganti's lien rights to the Defendant's Pre-Petition Lien with knowledge of, and without informing Morganti that, the Modified Construction Loan and Construction Tax Credit

18

were insufficient to pay for the completion of Morganti's work on the

Project;

b. Upon information and belief, attaching Morganti's signature page to a

version of the subordination agreement to which Morganti never agreed;

c. Entering into a scheme with WSTC to obtain Morganti's work on the Project

and the benefit of certain tax credits without any intention of paying

Morganti;

d. Executing a scheme to induce Morganti and its subcontractors to continue

performance on the Project so that the Debtors could obtain a certificate of

substantial completion to obtain tax credits for the benefit of the Defendant

without any intention of paying Morganti for its work;

e. Concealing from Morganti the fact that the Modified Construction Loan and

the Construction Tax Credit were insufficient to pay for Morganti's

completion of the Project;

f. Misrepresenting to Morganti, both expressly and impliedly that the Modified

Construction Loan and the Construction Tax Credit provided sufficient

funding to pay for Morganti's completion of the Project; and

g. Approving and/or directing payments from certain tax credit proceeds

received by WSTC to Morganti's subcontractors directly, for the sole

purpose of obtaining work necessary for a final certificate of occupancy and

avoiding WSTC's payment obligations to Morganti.

19

102.    As a result of the foregoing inequitable conduct, Patriot has received the direct

benefit of Morganti's work on the Project despite failing to pay for it.

103.    As a result of the foregoing inequitable conduct, Patriot has caused injury to

Morganti.

104.    As a result of the foregoing inequitable conduct, Patriot has engaged in conduct

that was egregious and severely unfair in relation to Morganti and other creditors of the

Debtors.

105.    WHEREFORE, Plaintiff requests a determination by the Court:

    a.  That Patriot's Pre-Petition Lien shall be equitably subordinated to

        Morganti's Mechanics' Lien;

    b.  Awarding costs of suit, reasonable attorneys' fees, and pre- and post-

        judgment interest, if applicable; and

    c.  Awarding such other and further relief as this Court deems just and proper.

## COUNT FOUR
### (Avoidance and Recharacterization of Payment of
### Interest, Fees, Costs, and Expenses – 11 U.S.C. § 506(b))

106.    Plaintiff repeats and realleges the foregoing allegations as if set forth at length

herein.

107.    Upon information and belief, the Pre-Petition Loan Collateral securing the

Modified Construction Loan exceeds the amount of the debt due and owing the Defendant.

108.    Notwithstanding the three appraisals obtained in 2013, 2014 and 2016, the

Defendant and the Debtors assert that the Defendant is undersecured.

20

109.    Pursuant to Section 506(b) of the Bankruptcy code, "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statue under which such claim arose."

110.    The limitation contained in Section 506(b), however, indicates that only oversecured creditors, and not undersecured creditors, are entitled to receive such costs, fees and related payments.

111.    In the event, and only in the event, that this Court ultimately determines that Defendant Patriot was undersecured as of the Petition Date (which Morganti disputes), the Debtors' payments of interest, fees, costs, and expenses to or for the benefit of Defendant Patriot, on account of the Prepetition Loan Obligations should be avoided and recharacterized as repayments of the principal amount of Defendant Patriot's debt.

112.    WHEREFORE, Plaintiff requests a determination by the Court:

    a.    That to the extent a finding is made that Defendant Patriot is undersecured, the Debtors' post-petition payments of interest, fees, costs and expenses to or for the benefit of such Defendant, on account of the Pre-Petition Loan Obligations, are avoided and recharacterized as repayments of principal;

    b.    Awarding costs of suit, reasonable attorneys' fees, and pre- and post-judgment interest, if applicable; and

    c.    Awarding such other and further relief as this Court deems just and proper.

21

## COUNT FIVE
### (Equities of the Case Exception – 11 U.S.C. § 552(b))

113.     Plaintiff repeats and realleges the foregoing allegations as if set forth fully herein.

114.     The Replacement Liens granted to Defendant Patriot may be subject to the "equities of the case" exception to § 552 of the Bankruptcy Code.  In the event that this Court determines that Patriot is undersecured as it has alleged, the Debtors' granting of Replacement Liens should be limited as provided for under § 552 of the Bankruptcy Code.

115.     WHEREFORE, Plaintiff requests a determination by the Court:

    a.   That the equities of the case exception of §552 of the Bankruptcy Code applies to the Replacement Liens granted to Defendant Patriot;

    b.   Awarding costs of suit, reasonable attorneys' fees, and pre- and post-judgment interest, if applicable; and

    c.   Awarding such other and further relief as this Court deems just and proper.

PLAINTIFF
THE MORGANTI GROUP, INC.


By:_____/s/ Kristin B. Mayhew_____
        Louis R. Pepe – ct04319
        Kristin B. Mayhew – ct20896
        Rory R. Farrell – ct29655
        McElroy, Deutsch, Mulvaney & Carpenter, LLP
        30 Jelliff Lane
        Southport, CT  06890-1436
        Tel.:   (203) 319-4022
        Fax:   (203) 259-0251
        Email  kmayhew@mdmc-law.com

KBM/213626/0140/1501860v3
06/01/18-HRT/BD